CASPER LOSEY, administrator, appellant,

*v.*

CATHARINE WESTBROOK et al., respondents.

A testator gave his homestead and a certain legacy to his wife for life, charged on a farm given to his son Andrew. He then made devises to his daughter Sarah, to the children of his daughter Margaret, and to the children of his daughter Temple. He then devised a farm to his daughter Catharine, and added, "And I do further order that the said Catharine shall have an amount of money paid to her in addition to the above-said farm, out of my estate, to make her share *equal with the rest of my children named.*" He

Losey v. Westbrook.

then gave his residuary estate equally to his other children and their repre-sentatives, not before provided for. He then ordered that the property given to his wife be sold after her decease, "and the proceeds of the same shall be equally divided *among my last-mentioned children.*" After the widow's death, the farm given to her for life was sold.—*Held*, that Catharine was entitled to share the proceeds equally with her brothers and sisters, mentioned in the re-siduary clause, the testator's intention being that the proceeds should be part of the subject of that clause.

Appeal from decree of Sussex orphans court.

*Mr. C. D. Thompson* and *Mr. L. Van Blarcom*, for appellant.

*Mr. A. R. Shay*, for respondents.

THE ORDINARY.

The only question involved in this appeal is as to the con-struction of the will of John Losey, deceased, late of Sussex county. By it, after directing the payment of his debts and fu-neral charges, he gave to his wife his homestead and household furniture (with directions to sell the latter, with certain excep-tions, in case she should not keep house after his death) and the interest of $1,000, to be secured by mortgage on the farm on which his son Andrew then lived. He then made the following devises and bequests : To his daughter Sarah Yetter, the farm on which she resided, charged with the sum of $200, to be paid to his executors; to the children of his deceased daughter Mar-garet Swartswelder, $600; the like sum to the children of his deceased daughter Temple Keen; and to his daughter Catharine Westbrook the farm on which she then lived, with an additional lot of land; that farm, with the addition, to be valued at $700. And he added as follows :

" And I do further order that the said Catharine Westbrook shall have an amount of money paid to her in addition to the above-said farm out of my estate, to make her share equal with the rest of my children named."

He then ordered his executors to sell the farm on which An-

drew Losey lived in one year after his (the testator's) decease, and proceeded as follows:

" To my remaining children, Mary Van Horn, wife of Philip Van Horn; Elsie Thompson, wife of Samuel Thompson; John Losey, Casper Losey and Andrew Losey, I do order that my remaining property, of whatever kind, after the above legacies are paid, shall be equally divided between them; each to have equal shares, one with the other; the amount that will be due to my daughter Mary Van Horn, wife of Philip Van Horn, I want her to have the interest of the same during her lifetime, and after her death I want the same equally divided among her children."

He then added :

" The lot left to my wife, Sarah Losey, and the property of whatever kind left to my wife, I do order shall be sold after her decease, and the proceeds of the same shall be equally divided among my last-mentioned children."

The will is dated April 14th, 1866, and it was proved in November following.   In April term, 1868, of the Sussex orphans court, the executor, John H. Losey, rendered an account, which was passed.   In it he prayed and obtained allowance for the $1,000, the interest of which was, by the will, given to the testator's widow.   The balance in his hands was $5,001.23.   The executor, after having added to that balance the sum of $700 for the valuation of the farm and addition thereto devised to Mrs. Westbrook, and deducted the revenue tax, paid Mrs. Westbrook, in April, 1868, a sum of money equal, with the $700, to the one-sixth of the remainder, and took from her a receipt and discharge under seal, and signed by her and her husband, by which they acknowledged that they had received from him $940.70 in full " for the share and proportion due her from the estate in his hands, and thereby discharged, acquitted and released him from payment to them or either of them of any other moneys on account thereof."   The receipt is dated April 13th, 1868.   The executor died in February, 1870, and in March following, the appellant was appointed administrator *cum testamento annexo de bonis non*.   In September term, 1875, the administrator rendered an account.in the orphans court, by which it appeared that

Losey *v.* Westbrook.

the estate then in his hands was a balance of $955.51, consisting of principal and interest of a bond and mortgage, taken to secure the widow the interest given to her by the will. The widow died in 1880. The administrator, after her death, collected the money due on that bond and mortgage, and sold the homestead property, and, without an order of any court, distributed the money from both sources as follows : one-fifth to each of the following children of the testator : Mrs. Mary Savercool (formerly Van Horn), Mrs. Thompson, Andrew Losey and Casper Losey, and one-fifth to the children of the testator's son John ; paying nothing to Mrs. Westbrook. The administrator was subsequently required to file his final account, which he did, and it was duly passed. Afterwards, on the petition of Mrs. Westbrook, a decree of distribution was made by the orphans court, directing that the fund be distributed and paid as follows : to Mrs. Savercool, Mrs. Thompson, Mrs. Westbrook, Andrew Losey and Casper Losey, each one-sixth, and to the children of John Losey, one-sixth. From that decree the administrator appealed, and the question is as to the correctness thereof, and that depends on the construction of the will. It is agreed that the testator meant by the words " the rest of my children named," at the close of the clause containing the specific devise to Mrs. Westbrook, not all of his children named in the will, but only those named in the residuary clause. He manifestly intended that Mrs. Westbrook should have an equal share with the other children named in the residuary clause in the entire residue, for he says so. Of course he intended that in ascertaining her share the valuation of $700 should be taken into the account. The subject of the disposition in the residuary clause is not part only of the residue of his estate, but the whole of it. The appellant insists that Mrs. Westbrook is excluded from participation in the fund, which is made up of the proceeds of the sale of the homestead, and the fund the interest whereof was given to the widow for life. He bases this claim on the language of the clause immediately following the residuary clause. The clause in question is as follows :

"The lot left to my wife, Sarah Losey, and the property of whatever kind left to my wife, I do order shall be sold after her decease, and the proceeds of the same shall be equally divided among my last-mentioned children."

The proceeds of the sale of the homestead and the fund set apart for the widow would have passed under the residuary clause, but the clause just quoted was inserted to remove all possible doubt on the subject, and the reason why Mrs. Westbrook was not named in it is the same as the reason why she was not named in the residuary clause. The testator had provided that whatever the gift to his children named in the residuary clause, she should be equal with them, taking into account the specific devise to her. Nor is she estopped by the receipt from claiming participation in the distribution of the fund in question. It was manifestly intended to cover no more than the fund in hand for distribution at the time it was given.

The decree will be affirmed, with costs.